13979

OAKMAN SERVICE STATION, INC., v. PEOPLE'S OIL CO.

(178 S. E., 129)

*Messrs. Lyles & Daniel,* for appellant,

*Messrs. Nicholls, Wyche & Russell,* for respondent,

January 16, 1935.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The plaintiff sued the defendant in the Court of Common Pleas for Spartanburg County for damages for an alleged willful trespass by the latter upon real property in possession of the former. The complaint states two causes of action, the first having to do with a filling station at 252 St. John Street and the second with a similar station at 217 West Main Street, both in the City of Spartanburg. At the proper time on trial of the case, the defendant moved for a directed verdict, as to the second cause of action, on the ground that there was no testimony establishing the relation of lessor and lessee between the People's Oil Company and the Oakman Service Station, Inc.; and also for a directed verdict as to punitive damages, on both causes of action, upon the ground that there was no evidence of any willful invasion by defendant of plaintiff's rights. The motions were refused, and a verdict for both actual and punitive damages was rendered. The defendant then asked for a new trial on the grounds that (1) the Court erred in submitting the case to the jury, and (2) that, in any event, no punitive damages should be allowed. From an order denying the motion, this appeal is taken.

A statement of the following facts is necessary for a proper understanding of the controversy: The Oakman Service Station is a corporation organized under the laws of this State, and was, for some time prior to March 21, 1932, in possession and the operator of the two retail filling stations above mentioned. The St. John Street station was

leased by the plaintiff from one Dr. Black; the other was rented by it, according to its claim, from the defendant.

The People's Oil Company, also a corporation, distributes and sells, both at wholesale and retail, petroleum products of all types. The West Main Street station, at the time of the alleged trespass, belonged to this company, which had purchased it from the plaintiff on May 15, 1931. M. S. Oakman, who owned about three-fourths of the capital stock of the Oakman Service Station and who was also president of that corporation, entered, individually, on the date of the purchase mentioned, into a written contract with the defendant, by the terms of which he became the company's wholesale agent at Spartanburg. Under this agreement, Oakman, among other things, was required to account daily to the company for all moneys received from sales made by him to retail dealers. An audit of his account on March 18, 1932, disclosed a considerable shortage. Consequently, the appellant, on March 21st, canceled its agency contract with him; and in connection therewith proceeded to take over the two above-named retail filling stations and to oust the plaintiff from possession and operation thereof.

As the appellant is restricted in its exceptions to the grounds of its motion for a new trial, only two questions are presented by the appeal. The first of these relates to the defendant's motion for a directed verdict with respect to the West Main Street station; the claim being, as stated, that there was no evidence to establish the relation of lessor and lessee between the People's Oil Company and the Oakman Service Station.

In considering this question, it should be kept in mind that the West Main Street place consisted of a retail plant and a bulk plant; the issue here in dispute having to do with the former. The two stations were on the same lot; the bulk plant being operated by Oakman himself and the retail by the plaintiff, as claimed by it. Oakman testified that the defendant stated, through one of its

representatives, that the monthly rental of the Oakman Service Station would be $127.50 and that the lessor's action, in deducting this amount each month from the commissions of the witness instead of having the plaintiff remit it, was for the sake of convenience, to avoid having to send the money back and forth. In addition, certain circumstances disclosed by the testimony tend to support the respondent's contention: Signs had been erected about the place, designating the operator as the Oakman Station; the defendant sold products to the retail plant and billed them to the plaintiff; the two plants, according to Oakman, "were operated separately"; and up to the date of the alleged trespass the appellant had never checked or audited the retail station.

In *Lower Main Street Bank v. Caledonian Insurance Co.*, 135 S. C., 155, 133 S. E., 553, 555, it is said: "The well-established rule in this State is that if there is any testimony whatever to go to the jury on an issue involved in a cause, or even if more than one inference can be drawn from the testimony, then it is the duty of the Judge to submit the cause to the jury. This is true, even if witnesses for the plaintiff contradict each other, or if a witness himself in his testimony makes conflicting statements. The credibility of witnesses is entirely for the jury. On a motion for a directed verdict, the evidence in the cause must be considered most favorably to the plaintiff."

Applying the above-stated principles, it is clear that, under the testimony in the case at bar, the trial Judge could not have done otherwise than to refuse the defendant's motion for a directed verdict on this ground. The first assignment of error, therefore, is without merit.

The second exception charges the Court with error in refusing the defendant's motion for a directed verdict as to punitive damages on both causes of action. Appellant's contention is that there was no evidence of a willful and high-handed invasion of the plaintiff's rights by the People's Oil Company; "the testimony at most showing

nothing more than a peaceful, unaggravated trespass on the part of the defendant."

In considering defendant's motion for a new trial, Judge Sease, with respect to the question here made, had this to say: "Finally, the defendant submits that in no event should punitive damages have been recoverable by the plaintiff for the alleged trespasses. It should be noted in this connection, however, that certain witnesses for the plaintiff testified that the defendant was warned, in advance of the alleged trespasses, that it had no right to take possession of either of said stations, and that the plaintiff quite vigorously protested against either of the alleged trespasses. The plaintiff introduced further proof that the defendant, in spite of these warnings and protests, and without making the slightest investigation of its rights in the premises, proceeded without further ado to take over the two stations and to appropriate unto itself the property thereon located, although it seemed probable that if the defendant had inquired into the records in its own main office at Charlotte, North Carolina, it would have ascertained that it was without right to the immediate possession of either station. Under such circumstances, it appears to me that the recovery of punitive damages was properly an issue for the jury (*Fredericks v. Commercial Credit Co.,* 145 S. C., 380, 143 S. E., 179), and I am not inclined to disturb their conclusion with respect thereto."

An examination of the testimony on this point, which we deem it unnecessary to review, convinces us that the conclusion reached by the trial Judge was correct. It appears that the theory upon which the appellant claims it had a right to take over the West Main Street retail station is, that it could legally do so under the agency contract between it and M. S. Oakman, although there is no provision in that agreement fixing the payment of any rental for such station. It is therefore reasonably inferable that the possession and operation of the retail station in question was by virtue of an en-

tirely different rental contract, as testified to by Oakman. With regard to the St. John Street Station, the appellant's only defense was that it acted under an honest mistake in what it did. However, it knew, or should have known, that it had never leased that station to any one, and had never been paid rent for it by the plaintiff or by any one else. Despite these facts, when Oakman, according to his testimony, protested against the defendant taking over these stations and ousting the plaintiff therefrom, the reply was, "We know what we are doing." Whether the appellant acted willfully in the matter was undoubtedly under the evidence a question for the jury.

The question raised by the third exception was not made a ground of the motion for a new trial, and for that reason is not properly before us.

The judgment of the Circuit Court is affirmed.

MESSRS. JUSTICES CARTER and BONHAM and MESSRS. ACTING ASSOCIATE JUSTICES J. HENRY JOHNSON and C. J. RAMAGE concur.